ORIGINAL

# In the United States Court of Federal Claims

No. 91-1057V

(Filed: JUL 2 5 1995 )

---

VERNA MAY )
    Petitioner, )
)
v. )
)
SECRETARY OF DEPARTMENT )
OF HEALTH AND HUMAN )
SERVICES, )
    Respondent. )

FILED
JUL 2 5 1995
U.S. COURT OF
FEDERAL CLAIMS

---

Thomas C. Knowles, Oakland, California, attorney of record for petitioner.

Michael P. Milmoe, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for respondent.

---

OPINION

YOCK, Judge.

This case comes before the Court on the petitioner's Motion for Review of Special Master George L. Hastings, Jr.'s Decision, May v. Secretary of Dep't of Health & Human Servs., No. 91-1057V (Fed. Cl. Sp. Mstr. May 2, 1995) (hereinafter Decision), denying the petitioner's claim for compensation from the National Vaccine Injury Compensation Program (the "Vaccine Act" or the

"Vaccine Program").¹  The special master held that the Petition failed to provide sufficient supporting documentation demonstrating that the petitioner had incurred in excess of $1,000 in unreimbursable expenses due in whole or in part to a vaccine-related injury as required by subsection 11(c)(1)(D)(i) of the Vaccine Act. The special master held that later expenses incurred after the date of filing the Petition could not be counted toward reaching the $1,000 threshold.

For the reasons presented below, this Court is unpersuaded by the petitioner's arguments and affirms the special master's May 2, 1995, Decision.

## Background

For purposes of this Opinion, the Court has considered the facts as alleged by the petitioner Verna May in her Petition and in her later supplemental filings. According to Ms. May, soon after receiving a rubella vaccination at 55 years of age, on April 5, 1990, she developed an ailment in her joints which was later diagnosed as arthropathy. Believing the joint ailment to be caused by the rubella vaccination, Ms. May decided to file a claim for compensation under the Vaccine Act.²  Although the Vaccine Act allows up to three years to file a petition for

---

¹ The applicable statutory provisions governing the Vaccine Program are found at 42 U.S.C. §§ 300aa-10 et seq. (1988 & Supp. V 1993). Hereinafter, for ease of citation, all references will refer to the relevant subsection of the current amended version of 42 U.S.C. § 300aa.

²The Vaccine Act awards compensation to individuals who have suffered vaccine-related injuries after an inoculation. In general, to obtain an award, a petitioner must make several factual demonstrations, including showings that the petitioner received a vaccination covered by the statute; received it in the United States; suffered an injury caused by the vaccination, or in many cases presumed to be caused by the

2

compensation, Ms. May filed her Petition, along with exhibits and statements from several doctors, on April 3, 1991, just less than one year after her rubella vaccination. This early filing was accomplished in hopes of tolling California's one-year statute of limitations for tort actions, which would presumably have expired on April 5, 1991.

On May 8, 1991, the case was assigned to Special Master Hastings, who, on June 18, 1991, requested more expert evidence on the topics of causation, duration of injury, and substantial expense. On September 13, 1991, Ms. May complied by filing a doctor's report. Numerous telephonic status conferences occurred throughout the duration of the case, most of which focused on Ms. May's ability to prove causation of her injury by a rubella vaccine. To this end, beginning on September 27, 1991, Special Master Hastings allowed several enlargements of time and a suspension of proceedings in order to observe the outcome of a similar "test case" involving rubella vaccine.

On October 12, 1993, the Government finally filed Respondent's Supplemental Rubella Report, which, for the first time, raised the issue of the $1,000 threshold. In particular, the respondent contended that Ms. May had not presented any evidence to show that she had "incurred unreimbursable expenses due in whole or in part to [her] illness * * * in an amount greater than $1,000

---

vaccination; suffered residual effects lasting at least six months from the injury; incurred at least $1,000 in unreimbursable expenses as a result of the injury; and has received no previous award or settlement on account of the injury. Subsection 11(c).

\* \* \*." Subsection 11(c)(1)(D)(i). Such unreimbursable expenses, according to the respondent, must be incurred <u>prior</u> to filing the petition, and expenses incurred later may not count toward the $1,000 threshold. On March 14, 1994, and April 25, 1994, Ms. May filed additional doctors' reports.

On July 6, 1994, the petitioner filed her brief addressing the $1,000 issue. On July 19, 1994, the Government filed a notice stating that it would no longer contest the issue that the petitioner's rubella vaccine caused her arthropathy. The Government did continue to assert, on the other hand, that the petitioner had not met the $1,000 threshold. Ms. May filed a Supplemental Brief on November 8, 1994, on the $1,000 issue, to which the Government responded on February 3, 1995. Finally, Ms. May submitted a Reply to the Government's Response on February 18, 1995.

The special master issued his decision on May 2, 1995, denying compensation. The special master found that the petitioner had failed to establish that she had incurred unreimbursable medical expenses in an amount exceeding $1,000 prior to filing her Petition. Further, the special master held that expenses incurred after the filing of Ms. May's petition were ineligible for use in meeting the $1,000 threshold and that the petitioner could not submit a supplemental pleading in order to update her original Petition.

On June 1, 1995, the petitioner appealed to this Court by filing her Motion for Review.

4

## Discussion

1. Standard of Review

For Vaccine Act cases on review to the United States Court of Federal Claims, the applicable standard is clear: a special master's decision may not be disturbed unless it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Subsection 12(e)(2)(B); Munn v. Secretary of Dep't of Health & Human Servs., 970 F.2d 863, 869 (Fed. Cir. 1992). Errors of law are reviewed under the "not in accordance with law" standard. Munn, 970 F.2d at 870; Hossack v. Secretary of Dep't of Health & Human Servs., 32 Fed. Cl. 769 (1995). The Court of Federal Claims reviews such questions of statutory interpretation *de novo*. Neher v. Secretary of Dep't of Health & Human Servs., 984 F.2d 1195, 1198 (Fed. Cir. 1993); Hossack, 32 Fed. Cl. at 773; Staples v. Secretary of Dep't of Health & Human Servs., 30 Fed. Cl. 348, 353-54 (1994); Allison v. Secretary of Dep't of Health & Human Servs., 23 Cl. Ct. 551, 554 (1991); Hale v. Secretary of Dep't of Health & Human Servs., 22 Cl. Ct. 403, 406 (1991). Because the objections raised by the petitioner to the special master's Decision allege errors of law and statutory interpretation, this Court will review the questions *de novo*.

2. The Petitioner's Objections

All of the petitioner's objections involve the special master's interpretation and handling of the $1,000 threshold for compensation. Subsection 11(c)(1) of the

5

Vaccine Act sets forth certain requirements that each petitioner must satisfy in order to be eligible for compensation under the Vaccine Program. The explicit statutory requirements include the following:

> (c) Petition content
>     A petition for compensation under the Program for a vaccine-related injury or death shall contain--
>         (1) * * * an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died--
>             * * * *
>                 (D) (i) * * * incurred unreimbursable expenses due in whole or in part to such illness, disability, injury or condition in an amount greater than $1,000 * * *.

Subsection 11(c).

The petitioner contends, first of all, that the special master's interpretation of the term "incurred," found within subsection 11(c)(1)(D)(i), is overly narrow and restrictive. Second, the petitioner asserts that the special master erred in not permitting all expenses incurred within the Vaccine Act's three-year statute of limitations to be used in calculating the $1,000. Instead, Special Master Hastings required that the expenses be incurred prior to filing the Petition. Third, the petitioner objects to the special master's refusal to allow her to file a supplemental pleading "to cure the * * * defect caused by the conflict between Petitioner's California statute of limitations and the various provisions of the Act * * *." Pet'r Mem. of Objections in Supp. of Motion for Rev. (hereinafter Pet'r Mem.) at 16 (footnote omitted).

6

Initially, the petitioner claims that the term "incurred" is ambiguous, unclear, and open to more than one meaning. According to the petitioner, the special master erroneously equated the term "incurred" with the term "spent," thereby requiring the petitioner to have actually paid for the expenses. This Court, however, has recently held that the term "incurred" is neither ambiguous nor subject to multiple interpretations. Black v. Secretary of Dep't of Health & Human Servs., No. 90-3195V, 1995 WL 354300, slip op. at 8 (Fed. Cl. May 30, 1995). The plain meaning of the statute is clear and understandable.

> Dictionaries define the word "incur" as "to render oneself liable to (damage)," "to become through one's own actions liable or subject to," "to bring upon oneself," VII Oxford English Dictionary 835 (2d ed. 1989), or similarly, "to have liabilities cast upon one * * * [t]o become liable or subject to, * * * as to incur debt," Black's Law Dictionary 768 (6th ed. 1990). One incurs an expense, therefore, at the moment one becomes legally liable, not at the moment when one pays off the debt, nor at the moment when one decides that an expense will become necessary one day in the future.

Black, slip op. at 8-9. Contrary to the petitioner's assertions, the special master in his Decision never required the petitioner to have actually satisfied or paid the $1,000 in unreimbursable expenses. Instead, the special master's interpretation is consistent with that used in Black.

The petitioner has attempted to construe her situation as falling within this definition of "incur." She states, for example, that "[o]n the date she filed her Petition, she had already been terminated from her job, had been continuously paying her own health insurance premiums since December, 1990, and would do

so in the foreseeable future, as she was still unable to work." Pet'r Memo. at 7. The flaw in the petitioner's analysis is that the foreseeability of future expenses is irrelevant to the inquiry. The petitioner admits that only $892.62 was actually paid prior to filing her Petition, and she has presented no bills, invoices, or judgments showing that she owed or was *legally* liable for anything more by that date. Even assuming that her health insurance premiums were applicable to the calculation of the $1,000 threshold,[3] her next premium--which she claims would have raised her expenses "over the top"--did not fall due until one month after the filing of the Petition. Thus, she did not meet the $1,000 eligibility requirement.

The petitioner's second argument is that the special master erred in requiring that the relevant expenses be incurred prior to the filing of the Petition. The petitioner urges a construction that would permit any expenses incurred within the Vaccine Act's three-year statute of limitations to be allowable in calculating the $1,000. She asserts that because California law recognizes only a one-year statute of limitations, she was unfairly forced to file her Petition prematurely or lose her right to file a civil action later. The petitioner concludes that Congress intended the "endpoint" for the $1,000 to be the statutory deadline for filing the petition under section 300aa-16(a) and that to require expenses to be incurred prior to

---

[3]Just as the special master declined to make any finding regarding the appropriateness of using insurance premiums to meet the $1,000 threshold, so this Court also refrains from deciding that issue.

filing the Petition would contravene the legislative intent behind the Vaccine Act and would lead to absurd results. Pet'r Memo. at 9-10, 14, 17, 20.

The United States Court of Federal Claims has held that only those expenses incurred prior to the filing of a petition can be included in the calculation of the $1,000. Black, slip op. at 9-10; Hammond v. Secretary of Dep't of Health & Human Servs., No. 91-1238V (Fed. Cl. Sp. Mstr. Feb. 15, 1994), aff'd, (Fed. Cl. July 12, 1994). As the Court explained in those cases, the internal logic of the Vaccine Act requires that the unreimbursable expenses be incurred before a petitioner files. Just as a petitioner must wait six months past the date of vaccination in order to tell if he or she "suffered the residual effects" of a vaccine-related injury, subsection 11(c)(1)(D)(i), so a petitioner must also wait until an adequate amount of unreimbursable expenses--an amount greater than $1,000--have been incurred. The words "suffered" and "incurred" both appear in the past tense, which shows that the financial liability must already exist by the date of filing. Moreover, while the word "incurred" appears in the context of petition requirements, nothing in the provision alludes to a possible three-year window for accruing $1,000 in unreimbursable expenses.

This Court recognizes, as did the special master, that the combination of California's short statute of limitations and the Vaccine Act's requirement that the petitioner must satisfy the $1,000 requirement prior to filing a petition, might place the petitioner in the position where it is virtually impossible for her to

9

preserve both her state court options and her ability to receive compensation under the Vaccine Program. However, when the plain statutory language is unambiguous, then the Court must ordinarily regard that language as conclusive, absent some "clearly expressed legislative intent to the contrary * * *." United States v. Turkette, 452 U.S. 576, 580 (1981), quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). The language of subsection 11(c)(1)(D)(i) is unambiguous, and no expression of congressional intent contrary to the plain language exists.

Furthermore, whenever the United States waives its sovereign immunity, and by statute it consents to be sued, the statutory waiver must be strictly construed in the Government's favor. United States v. Sherwood, 312 U.S. 584, 586 (1941); Cosmic Constr. v. United States, 697 F.2d 1389, 1390 (Fed. Cir. 1982). The Vaccine Act is just such a limited statutory waiver of immunity, and this Court, therefore, must construe the Vaccine Act narrowly. Notwithstanding congressional intent to compensate certain eligible individuals for their vaccine-related injuries, this Court "[does] not have authority, in law or equity, to depart from the terms of the [Vaccine Act]." Wiggins v. Secretary of Dep't of Health and Human Servs., 898 F.2d 1572, 1574 (Fed. Cir. 1990); Massing v. Secretary of Dep't of Health and Human Servs., 926 F.2d 1133 (Fed. Cir. 1991). A narrow reading is particularly appropriate in subsection 11(c) of the Vaccine Act, where Congress provided the basic preconditions for eligibility. Given that Ms. May was

not able to meet the $1,000 requirement, the special master was correct in dismissing her Petition.

The petitioner's third objection is that the special master erred by refusing to permit her to file a supplemental pleading which allegedly would have satisfied the $1,000 requirement. The petitioner argues that pursuant to Federal Rule of Civil Procedure (FRCP) 15(d) and/or Rule of the United States Court of Federal Claims (RCFC) 15(d), she should have been permitted to file a supplemental pleading stating that, between the filing of her original Petition and the end of the Vaccine Act's three-year statute of limitations, she incurred additional unreimbursable expenses which, together with her pre-Petition expenses, total more than $1,000. The petitioner's objection presupposes that the timing element of the $1,000 requirement is either unimportant or nonexistent.

In rejecting her argument, the special master found that:

> the <u>time-specific</u> nature of [the $1,000] statutory requirement precludes me from adopting the approach suggested by petitioner here. To do so would simply amount to judicially setting aside the <u>timing</u> portion of this statutory requirement. Effectively, I would be ruling that while petitioner does in fact need to expend $1000, she does not always need to expend it prior to filing her petition. I would be setting aside part of a statutory requirement, and I cannot find that RCFC 15(d) or any other procedural rule could, under any circumstances, confer discretion upon me to do such a thing.

Decision at 8. This Court agrees with the special master's reasoning. While a few of the cases mentioned by the petitioner are somewhat analogous,[4] i.e., Mathews v. Diaz, 426 U.S. 67, 80 (1976); Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289-91 (8th Cir. 1988); Security Ins. Co. v. United States ex rel. Haydis, 338 F.2d 444 (9th Cir. 1964), other courts have denied the use of supplemental pleadings under similar situations. Reynolds v. United States, 748 F.2d 291 (5th Cir. 1984). This Court holds that RCFC 15(d) is unavailable to allow Vaccine Act petitioners to escape the timing element of subsection 11(c)(1)(D)(i), which is an integral and nonwaivable aspect of the $1,000 threshold. The requirements of the subsection are not simply "procedural mousetraps," as the petitioner would like to call them, but instead mandatory preconditions to compensability.

## CONCLUSION

For the reasons stated above, this Court affirms the May 2, 1995, Decision of the special master.

The clerk of the Court is directed to enter judgment accordingly.

---

[4] The special master specifically addressed the differences between Mathews, Wilson, Security Insurance, and the case at hand. In Mathews, it was not statutorily necessary that the plaintiff fulfill the relevant requirement by the date he filed his suit. The cases of Wilson and Security Insurance involved statutes which required plaintiffs to let a waiting period expire before filing suit, whereas the Vaccine Act mandates that a specific action be accomplished prior to filing a petition.